UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

THE UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                    Case No. 17-cv-2064 (JNE/HB)
                                                      ORDER
MIKE ROTHMAN, Commissioner of the
Minnesota Department of Commerce, in his
capacity as Liquidator of Minnesota Surety
and Trust Company,

        Defendant.

---

      The United States brought this action against Mike Rothman, Commissioner of the

Minnesota Department of Commerce ("the Commissioner"), in his capacity as liquidator of

the Minnesota Surety and Trust Company ("MS&T"), seeking a declaration that MS&T's

liability on 62 breached immigration bonds attached at the time the bonds were executed,

not when they were breached. The Commissioner moved to dismiss or stay, and the United

States moved for a judgment on the pleadings. For the reasons set forth below, both motions

are denied.

## I. BACKGROUND

      MS&T operated as a surety on federal immigration bonds until its state-ordered

liquidation on November 22, 2011. At the time of its liquidation, MS&T had roughly 800

open immigration bonds with the Department of Homeland Security ("DHS") totaling $6.9

million. In April 2012, the Commissioner mailed proof-of-claim forms to creditors and

federal agencies, including DHS, notifying them that any claims against MS&T had to be

received by November 1, 2012. DHS did not submit a claim to the liquidator on any of the

MS&T bonds prior to that deadline, electing instead to seek the return of each alien bonded by MS&T. *See* ECF No. 22 at 8-9. The overwhelming majority of those aliens were delivered to DHS. However, in 62 cases, the alien was not returned, and DHS considered these bonds breached. In April 2016, DHS filed a claim with the state's special deputy liquidator for $483,735.25, representing the face value of the 62 breached bonds ($467,900) plus interest and fees.

In November 2016, the special deputy denied DHS's claim. The special deputy concluded that the bonds had been canceled as of December 23, 2011, pursuant to Minn. Stat. § 60B.22, under which "insurance policies or similar contracts of coverage" expire 30 days from the date of liquidation. DHS requested reconsideration of the special deputy's decision in January 2017, but the Commissioner affirmed the initial ruling. The Commissioner then moved for summary judgment in the state liquidation proceeding to affirm his denial. DHS moved to stay the state case. With both state motions pending, the United States filed this action, seeking a declaration that MS&T's liability on the 62 immigration bonds attached at the time the bonds were issued — a judgment that would, according to the United States, prevent MS&T's obligations from being canceled by § 60B.22. The state court judge granted the United States' motion to stay, pending this Court's decision on the bond liability attachment question. ECF No. 40 at 6-9.

## II. DISCUSSION

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted). To survive a Rule 12 motion, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), as amended (Dec. 27, 2016).

### A. Motion to Dismiss or Stay

The Commissioner's motion to dismiss or stay turns on two principal arguments. First, he contends that the McCarran-Ferguson Act precludes the federal government from interfering with Minnesota's laws regulating the business of insurance – and, in particular, the 30-day expiration provision under Minn. Stat. § 60B.22. Second, he urges the Court to abstain from issuing a declaratory judgment under several abstention doctrines. As set forth below, neither argument is sufficiently strong to justify a dismissal or stay, particularly in light of the state court's decision to stay those proceedings pending this Court's resolution of the underlying question of MS&T's liability.

### 1. McCarran-Ferguson

The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, protects states from federal interference in insurance regulation. Under the statute, no "Act of Congress" can "invalidate, impair, or supersede" any state statute that has been enacted "for the purpose of regulating the business of insurance," unless the federal statute specifically relates to the business of insurance itself. 15 U.S.C. § 1012(b). In general, then, states enjoy the somewhat unique power of "reverse preemption" when it comes to the regulation of insurance. However, McCarran-Ferguson does not require the federal government to "cede the field of insurance regulation to the States." *Humana Inc. v. Forsyth*, 525 U.S. 299, 308 (1999). The mere fact that the federal claims "relate to the insurance business in the abstract" is not enough to

3

trigger McCarran-Ferguson protection. *Ludwick v. Harbinger Grp., Inc.*, 854 F.3d 400, 405 (8th Cir. 2017). The federal claims being made must bring forth "case-specific intrusion and interference." *Id.*

Here, the Commissioner argues that McCarran-Ferguson prevents the United States from superseding Minn. Stat. § 60B.22 and its cancelation of MS&T's obligations on the 62 contested bonds. However, the Commissioner does not point to any specific federal statute – i.e., an "Act of Congress" – that impairs the state's liquidation law. Instead, he contends that McCarran-Ferguson applies because there is a conflict between § 60B.22 and the "argument" that the United States makes regarding the timing of MS&T's liability. Def.'s Reply Mem. 5. But that "argument" is not an "Act of Congress," as McCarran-Ferguson requires. To the contrary, it is an argument that involves federal contract law. Further, the United States expressly concedes that it is not seeking to preempt § 60B.22, and nowhere does the United States rely on a federal statute to support its arguments regarding MS&T's liability.[1] Therefore, because there is no "Act of Congress" interfering with the state's regulatory scheme, McCarran-Ferguson does not apply.

## 2. Abstention

The Commissioner next argues that the Court should exercise its discretion over declaratory judgments and abstain from issuing a decision. Specifically, the Commissioner contends that "[t]here is no doubt that the liquidation proceeding in state court will fully resolve the dispute between the parties." Def.'s Mem. Supp. Mot. Dismiss 10. Therefore, the

---

[1] The United States invoked 28 U.S.C. §§ 1345 and 1331 for the purpose of establishing jurisdiction. Compl. ¶ 1. However, even if the Commissioner had attempted to use these two statutes to satisfy the "Act of Congress" requirement under McCarran-Ferguson, there does not appear to be viable precedent for reverse preempting jurisdictional statutes in this way. *See, e.g., Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Illinois*, 421 F.3d 835, 843 (9th Cir. 2005); *Gross v. Weingarten*, 217 F.3d 208, 222 (4th Cir. 2000); *Murff v. Prof'l Med. Ins. Co.*, 97 F.3d 289, 292 (8th Cir. 1996).

Commissioner concludes, permitting the state court to fully ventilate all of the issues is more economical than having this Court resolve only one question of federal law. Def.'s Mem. 11.

"Generally, a federal district court must exercise its jurisdiction over a claim unless there are exceptional circumstances for not doing so." *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 996 (8th Cir. 2005) (internal quotation omitted); *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976). However, courts enjoy "unique and substantial" discretion in declaratory judgment actions. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The extent of that discretion largely turns on whether there is a parallel state court action pending. *Scottsdale*, 426 F.3d at 999. When such an action is pending, the court's discretion is broad, and guided largely by considerations of judicial economy, practicality, and the need to avoid "[g]ratuitous interference" with the state proceeding. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

Whatever merits the Commissioner's various abstention arguments might have had when he initially made them, they now must be evaluated in light of the state court's recent decision to stay its proceeding pending this Court's resolution of the liability timing question. *See* ECF No. 40 at 6-9. At a minimum, that stay calls into question the Commissioner's assessment that the state court would fully resolve the dispute – a key component of his case for abstention. Moreover, the decision to grant the stay was made after a hearing that included a thorough discussion of the abstention question, including the prospect that staying the state proceeding would lead to "piecemeal litigation" when the case ultimately returned to state court. ECF No. 22 at 35-39. Simply put, the state court judge's decision to stay makes it far less certain that the state action will "fully and satisfactorily

resolve the dispute." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013). Against this background, abstention is not appropriate.

### B. Motion for Judgment on the Pleadings

Plaintiff's Rule 12(c) motion centers on the bond liability question. Specifically, the United States urges the Court to issue a judgment on the pleadings declaring – apparently for the first time – that a surety's liability on federal immigration bonds attaches when the bonds are issued. For the reasons set forth below, that motion is denied.

#### 1. Questions of Fact

As a threshold matter, the Court finds that there are no genuine issues of material fact that would preclude granting Plaintiff's motion. *See* Fed. R. Civ. Proc. 12(c). The Commissioner argues that there are disputed issues involving the bonds. Def.'s Mem. Opp'n J. Pleadings 7-8. Specifically, the Commissioner contends that because only one of the 62 disputed bond applications appears in the record, *see* ECF No. 14 at 45-47, there are genuine issues regarding the other 61 bonds – for example, whether they were filed on different versions of Form I-352, the government-issued form on which immigration bond applications must be completed. Def.'s Opp'n 8. As the United States rightly points out, however, the fact that 61 of the 62 bond applications are not in the record is immaterial to the current declaratory judgment action. Pl.'s Reply 10. The question that the United States has asked the Court to answer need only relate to one bond because all immigration bonds applications are made on Form I-352, and there is no evidence that any of the disputed bonds were issued pursuant to terms different from those in the record. *See* Pl.'s Reply 10, n. 3. Accordingly, the Court finds that there are no genuine issues of material fact.

2. MS&T's Liability on the Breached Bonds

The United States' liability-at-execution theory rests on two principal arguments: (a) immigration bonds must be construed as a matter of federal law, and (b) under federal law – and specifically Supreme Court precedent, federal regulations, and federal contract law – an immigration bond surety becomes liable at the time the bond is issued. There is strong support for the United States' first argument, but not for its second.

(a) Application of Federal Law

The immigration bonds in question should be construed under federal law. The terms of the bonds themselves stipulate that "[f]ederal law shall apply to the interpretation of the bond, and its terms shall be strictly construed." ECF No. 1-1 at 2. Moreover, courts have long interpreted immigration bonds as federal contracts. *See, e.g., United States v. Minnesota Tr. Co.*, 59 F.3d 87, 90 (8th Cir. 1995) ("An immigration delivery bond is essentially a contract between the Service [INS], the bonding agent and attorney-in-fact, and the surety company.") (internal quotation omitted); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1089 (N.D. Cal. 2010) ("The express language of the bond instrument, coupled with what appears to be the parties' intention, leads to the inevitable conclusion that the immigration bonds at issue are contracts."). Therefore, because "[f]ederal common law governs the interpretation and construction of a contract between the United States and another party," *United States v. Basin Elec. Power Co-op.*, 248 F.3d 781, 786 (8th Cir. 2001), the question of when liability attaches should be resolved under federal law.

(b) Liability Attachment

The United States argues that MS&T's liability on the 62 breached bonds attached at the time the bonds were executed, based on: (1) Supreme Court precedent, (2) the federal regulation governing surety bonds, and (3) the terms of the bonds themselves. None of these grounds provide the United States with the support it needs for its liability-at-execution theory to succeed.

*(1) Supreme Court Precedent*

The United States turns first to two Supreme Court cases involving the Federal Priority Act ("FPA") and its statutory predecessor. Pl.'s Mem. Supp. J. Pleadings 9. Plaintiff argues that these cases stand for the proposition that a surety's obligation to the United States is a present debt, even if it is conditional. Pl.'s Mem. 9. But both *United States v. State Bank of North Carolina*, 31 U.S. 29 (1832), and *United States v. Moore*, 423 U.S. 77 (1975), address the specific question of how priority statutes apply to debts. As such, while the United States seeks to leverage some of the language in those cases to buttress its immigration bond theory, the holdings themselves cannot bear this weight.

For instance, Plaintiff cites to *Moore* for the proposition that an "obligation [made before insolvency to the United States] was fixed and independent of 'events after insolvency.'" Pl.'s Reply 3 (citing *Moore*, 423 U.S. at 85). But the bracketed alteration that the United States makes to the actual *Moore* language is important. The original *Moore* text reads: "[T]he obligation here, and in the cases cited, was fixed and independent of 'events after insolvency.'" *Moore*, 243 U.S. at 85. The phrase "here, and in the cases cited" – which the United States replaces in its brief – is a direct reference to obligations evaluated and assigned under the FPA. *Id.* Moreover, the first sentence of the paragraph from which the

quoted passage is drawn leaves no doubt that the Supreme Court was addressing how the priority statute applies to unliquidated debts. *Id.* Therefore, it is simply too big of a leap to export this passage – or similar language from *State Bank* – to the immigration bond question now before this Court. If indeed liability attaches at the time of execution on those bonds, it cannot be because of the Supreme Court's holdings in these priority statute cases.

*(2) Federal Regulations*

The United States next turns to 8 C.F.R. § 103.6, the federal regulation governing surety bonds, to support its attachment-at-execution theory. Pl.'s Mem. 10. Plaintiff first highlights a portion of § 103.6(a)(1) that, it contends, defines a surety bond as an "extension of liability of [the] surety." Pl.'s Mem. 10. However, it appears that the United States has misread this portion of the regulation, mistaking an element in a list for a descriptive or qualifying phrase. The full sentence from which the excerpt is drawn makes this clear:

A district director is authorized to approve a bond, <u>a formal agreement to extension of liability of surety</u>, a request for delivery of collateral security to a duly appointed and undischarged administrator or executor of the estate of a deceased depositor, and a power of attorney executed on Form I-312, Designation of Attorney in Fact. 8 C.F.R. § 103.6(a)(1) (emphasis added).

Seen in context, this "extension of liability" phrase does not define the word "bond," as the United States suggests, but instead functions as the second item in a four-item list of things that a district director (as distinct from the regional director, mentioned later in the

9

subsection) is authorized to approve. Therefore, to the extent that the United States pins its liability theory to this phrase, the argument fails.

This misreading undercuts the United States' second regulation-related argument as well. The United States points to §103.6(c)(3), which states, "Substantial performance of all conditions imposed by the terms of a bond shall release the obligor from liability." Plaintiff interprets this to mean that MS&T's liability ended "only upon" the return of the bonded aliens to custody, which, presumably, would mean that it was liable at all times up until then. Pl.'s Mem. 10. Plaintiff contends that "any contrary construction" of § 103.6(c)(3) would contradict the nature of a bond as an "extension of liability." Pl.'s Mem. 10.

This interpretation of § 103.6(c)(3) is untenable. First, nowhere does the regulation say that the *only* way for liability to end is substantial performance – and, even if that were the case, it does not automatically follow that liability *begins* at the time of bond execution. And second, for the reasons set forth above, the United States cannot rely on the "extension of liability" phrase from § 103.6(a)(1) to support its interpretation of the "release" language from § 103.6(c)(3) because it has misread the "extension" phrase to mean something that it simply does not.

In short, neither part of the surety regulation supports Plaintiff's position that liability on immigration bonds attaches at the time of execution.

*(3) Bond Terms*

The United States turns last to the terms of the bonds themselves. Pl.'s Mem. 10. Specifically, Plaintiff points to Paragraph C of Form I-352, which states that "the obligor, and the agent acting on its behalf (if any), declare themselves bound in such an amount or successive amounts" as set forth in the subsequent sections of the bond application. ECF No.

10

1-1 at 3. The United States construes this passage to mean that a bond surety company is obligated on the bond from the time the application is submitted and the bond is issued.

Standing on its own, this portion of the bond terms might lend support to the United States' position. But there are other terms that suggest that liability does not attach at execution. For example, Paragraph G states: "If, however, the obligor fails to surrender the alien in response to a timely demand while the bond remains in effect, the full amount of the bond . . . becomes due and payable." ECF No. 1-1 at 4. This provision is most naturally read as a condition precedent, whereby the obligation to repay is triggered by the failure to produce the alien; if that event does not occur, the obligation is not realized. Indeed, at least one other federal district court has interpreted immigration bonds this way. *See Safety Nat. Cas. Corp. v. U.S. Dep't of Homeland Sec.,* 711 F. Supp. 2d 697, 716 (S.D. Tex. 2008) ("A timely demand to produce the alien is, therefore, a condition precedent to Plaintiffs' performance.").

As such, the terms of the bonds themselves do not establish that liability attaches at the time of execution. Instead, the terms either favor the Defendant's construction or, at the very least, they are ambiguous, in which case they should be read against the United States as the drafter of Form I-352. *See Safety Nat. Cas.*, 711 F. Supp. at 717 (applying *contra proferentem* to the terms of Form I-352). Either way, the terms do not provide the United States with the support it needs to prevail on its Rule 12(c) motion.

### 3. Application of § 60B.22 and Breach of Contract

Lastly, Plaintiff's 12(c) motion raises two additional issues that are outside the scope of this action. First, proceeding under the assumption that MS&T's liability attached at the time of bond execution, Plaintiff contends that Minn. Stat. § 60B.22 cannot cancel the

11

Commissioner's obligations to repay the United States. Pl.'s Mem. 10-13. However, as set forth above, the United States has not successfully shown that liability attaches at execution. And, even if it had, the question of how those bonds interact with the state's insurance liquidation laws is not one that the United States asked this Court to answer. Compl. at 2. Instead, it is a state law matter that is more appropriately decided by the state court handling the liquidation proceedings.

Second, the United States advances an alternate theory of recovery, repudiation of contract. This is also an issue that the Court cannot reach. For a repudiation argument to obtain, the United States would first have to establish that the bonds in question were indeed cancelled pursuant to § 60B.22. But as noted above, this is a state law question, and therefore is better addressed by the state court when it resumes its adjudication of the liquidation proceedings following the stay.

### III. CONCLUSION

Based on the files, records, and proceedings here, and for the reasons set forth above, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss or Stay [ECF No.12] is DENIED.

2. Plaintiff's Motion for Judgment on the Pleadings [ECF No. 19] is DENIED.


Dated: November 13, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

12